## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

The Continental Insurance Company,                 Civil No. 17-552 (DWF/HB)

          Plaintiff,

v.                                                 **MEMORANDUM**
                                                   **OPINION AND ORDER**
Daikin Applied Americas Inc.,                      **[FILED UNDER SEAL]**

          Defendant.

_____

Andrea E. Reisbord, Esq., and Jeanne H. Unger, Esq., Bassford Remele; and Patrick Florian Hofer, Esq., and William D'Orion Carson, Esq., Clyde & Co. U.S. LLP, counsel for Plaintiff The Continental Insurance Company.

Douglas L. Skor, Esq., John M. Bjorkman, Esq., and Monica Detert, Esq., Larson King, LLP; and Michael Lamar Jones, Esq., Henry & Jones, LLP, counsel for Defendant Daikin Applied Americas Inc.

_____

## INTRODUCTION

This matter is before the Court on Plaintiff The Continental Insurance Company's ("Continental") Motion for Partial Summary Judgment Declaring that Its Duty to Defend is Limited to Suits Against McQuay-Perfex, Inc. (Doc. No. 148), Defendant Daikin Applied Americas Inc.'s ("Daikin Applied") Motion for Partial Summary Judgment on the Duty to Defend (Doc. No. 175), and Continental's Motion for Partial Summary Judgment Declaring that It Has No Obligation to Pay Pre-Tender Defense Costs and Dismissing Daikin Applied's Breach of Contract Claim (Doc. No. 225). For the reasons

set forth below, the Court grants Continental's motions and denies Daikin Applied's

motion.

## BACKGROUND

Daikin Applied manufactures heating, ventilating and air conditioning products.

Daikin Applied is a defendant in various lawsuits alleging bodily injury from exposure to

asbestos (the "Asbestos Suits").  Continental is currently defending Daikin Applied in a

number of Asbestos Suits under insurance policies it sold to McQuay-Perfex from 1967

to 1982.  Continental is defending under a reservation of rights.

Daikin Applied is a successor to McQuay-Perfex, and Continental acknowledges

that Daikin Applied is entitled to defense coverage from Continental under policies

issued to McQuay-Perfex with respect to McQuay-Perfex's liabilities.  (Doc. No. 150

at 2.)  Daikin Applied, however, is also a successor to other companies via various

corporate transactions that occurred after the last Continental policy expired.[1]

Daikin Applied has tendered to Continental and demanded that Continental defend

numerous underlying suits alleging liability arising out of exposure to

asbestos-containing products.  Some of these suits allege exposure to a product made by

McQuay-Perfex, but others allege exposure to products made by other companies.  Since

2013, Daikin Applied has tendered all such suits to Continental, including suits that

---

[1]     Daikin Applied asserts that the relevant corporate transactions were simply name
changes—that McQuay, Inc. and McQuay-Perfex, Inc. changed names to SnyderGeneral
Corporation, to AAF-McQuay, Inc., and then to Daikin Applied.  However, as detailed
below, the corporate history is more complex and includes both mergers and name
changes.  The evidence shows that Daikin Applied is a successor to, not the same
corporation as, McQuay-Perfex.

allege that Daikin Applied is liable for products made by predecessor companies other than McQuay-Perfex, such as The Singer Company ("Singer") and American Air Filter.

## I.    The Policies

From January 1, 1967 to January 1, 1982, Continental issued five primary policies (the "Policies" or the "Continental Policies") that are relevant here:

- Policy No. CBP 455081, issued to McQuay, Inc. with a policy period from January 1, 1967 to January 1, 1970.  (Doc. No. 188 ("Stipulation Regarding Existence and Terms of Certain Insurance Policies") ¶ 2.)

- Policy No. CBP 400570, issued to McQuay, Inc. with a policy period from January 1, 1970 to January 1, 1973.  (*Id*. ¶ 3.)

- Policy No. CBP 411385, issued to McQuay-Perfex with a policy period from January 1, 1973 to January 1, 1976.  (Doc. No. 179 ("Donoghue Decl.") ¶ 8, Ex. 1.)

- Policy No. CBP 411645, issued to McQuay-Perfex with a policy period from January 1, 1976 to January 1, 1979.  (*Id*., Ex. 2.)

- Policy No. CBP 411751, issued to McQuay-Perfex with a policy period from January 1, 1979 to January 1, 1982.  (*Id*., Ex. 3.)

The Policies provide comprehensive general liability coverage.  Each Policy provides that Continental will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage caused by an "occurrence."  (*See, e.g.*, Ex. 1 at 8.)  An "occurrence" is defined as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage" during the policy period.  (*Id*. at 13.)  "Bodily injury" means "bodily injury, sickness or disease sustained by any person which occurs during the policy period,

including death at any time resulting therefrom." (*Id*. at 12.)  The "insured" is defined as "McQuay-Perfex, Inc. and any owned subsidiary." (*Id*.)  The last Policy expired in 1982.

## II.   Corporate History of Daikin Applied

Daikin Applied is part of a large multinational company with a complex corporate history involving numerous mergers and asset acquisitions.  (Doc. No. 152 ("Hofer Decl.") ¶ 3, Ex. 2 ("RFA Responses") at RFA Nos. 1-69.)  For example, in 1933, McQuay, Inc. was incorporated in Minnesota.  (RFA No. 5; Doc. No. 179 ("Donoghue Decl.") ¶ 10, Ex. 4.)  McQuay, Inc. merged with Perfex Corporation and in 1971 and became "McQuay-Perfex, Inc."  (RFA No. 18.)  In 1983, McQuay-Perfex, Inc. changed its name back to "McQuay, Inc."  (RFA No. 24.)

In the 1980s, Snyder General Corp., which later merged with McQuay-Perfex, acquired certain liabilities of Singer and other companies via the following corporate transactions.  In 1981, Snyder General-Texas incorporated, and the following year, acquired The Singer Company's Climate Control Division.  (RFA No. 23; Donoghue Decl. ¶ 11, Ex. 7.)  In 1984, Snyder General-Texas acquired three additional companies: ARCO Comfort Products Co., Halstead & Mitchell division of Halstead Industries, and McQuay, Inc. (all of which then became subsidiaries of Snyder General-Texas).  (RFA Nos. 22-27; Doc. No. 152  ("Hofer Decl. I") ¶ 4 ("Daikin Applied 30(b)(6) Dep.") at 157; Donoghue Decl. ¶ 12, Ex. 8.)  Then in 1986, Snyder General-Texas transferred its liabilities and assets to McQuay, Inc., McQuay, Inc. changed its name to "SnyderGeneral Corporation" ("SnyderGeneral-Minn."), and Snyder General-Texas changed its name to Snyder Management Corporation.  (RFA Nos. 39-42; Donoghue Decl. ¶ 13, Exs. 9, 10.)

That same year, SnyderGeneral-Minn. acquired Barry Blower and Snyder Management Corporation merged with SnyderGeneral-Minn. (RFA Nos. 43-44; Donoghue Decl. ¶ 14, Ex. 11.) In 1987 and 1988, SnyderGeneral-Minn. acquired Jenn Industries and the Los Angeles Branch of Hess, Greiner & Pollard Inc. (RFA Nos. 47, 52.) In 1978, Allis-Chalmers acquired the property, rights, assets, business, and goodwill of American Air Filter, which was created in 1925. (RFA Nos. 1, 21.) Then in 1988, SnyderGeneral-Minn. acquired the assets of American Air Filter. (RFA Nos. 21, 48, 51, 53 & 54; Donoghue Decl. ¶ 15.)

The corporate history continued as such: In 1992, another "SnyderGeneral Corporation" was incorporated in Delaware ("SnyderGeneral-Del."). (RFA No. 60; Donoghue Decl. ¶ 16, Ex. 12.) That same year, SnyderGeneral-Minn. merged with SnyderGeneral-Del. (RFA No. 61; Donoghue Decl. ¶ 16, Ex. 12.) In 1994, a Malaysian corporation bought SnyderGeneral-Del. and changed its name to "AAF-McQuay Inc." (RFA Nos. 62-63; Donoghue Decl. ¶ 17, Ex. 14.) Later, in 2006, Daikin Industries Ltd. bought AAF-McQuay Inc. and, in 2013, changed the name to "Daikin Applied Americas Inc." (RFA at No. 69; Donoghue Decl. ¶ 19, Ex. 16.)

## III.    The Asbestos Suits

Asbestos Suits have been brought against Daikin Applied by various names, including McQuay International, McQuay, McQuay-Perfex, and AAF-McQuay, Inc. Some of the Asbestos Cases implicate occurrences during the 1967-1982 coverage

period, including exposure to products made by Singer or American Air Filter.[2]  In 1998, Daikin Applied tendered the first suit to Continental under policies not at issue in this case, as well as to other insurers.  (Doc. No. 229 ("Hofer Decl. II") ¶ 2, Ex. 1 ("Daikin Applied 30(b)(6) Dep.") at 17-18, 22-23 & Ex. 4.)  Continental disclaimed coverage based on an asbestos exclusion.  (*Id*. at 18-19.)  In November 1998, Daikin Applied asked its attorney for information regarding available insurance coverage, after which the attorney identified the McQuay-Perfex policies (the Continental Policies).  (*Id*. at 28.)  Except for one case, Daikin Applied did not seek coverage under the Policies for roughly fifteen years and, instead, generally defended itself.  (*Id*. at 119.)

In 2012, Daikin Applied commissioned its insurance broker to identify insurance policies with potential coverage for Asbestos Suits.  (Hofer Decl. II. ¶ 6, Ex. 5 ("Mateikis Dep.") at 26-28 ("We undertook a forensic search for any insurance policies we and our predecessors might have had that did not exclude asbestos claims.  In October, we hit on policies from the early 1970s that did not contain the exclusion.").)  The Continental Policies were identified, among others.  (Daikin Applied 30(b)(6) Dep. at 56-57, 65-66.)  Nearly a year later, on or around September 25, 2013, Daikin Applied tendered twenty-three Asbestos Suits to Continental, alleging that a duty to defend arose under the identified Policies.[3]  (*Id*. at 76 & Ex. 18.)

---

[2]    For example, Asbestos Suits have alleged liability against Daikin "individually as a successor to Singer."  (Doc. No. 209 ("Hofer Reply Decl.") ¶ 8, Ex. 7 at 005500.)

[3]    Daikin Applied tendered these suits to multiple insurance companies.

Continental acknowledged Daikin Applied's claim, reserved its rights, and began investigating whether Daikin Applied is entitled to coverage under the Policies. In October 2013, as part of its investigation, Continental sought additional information from Daikin Applied, and in particular, information about Daikin Applied's corporate structure and relationship with various predecessor companies. (*Id.* at 82-83 & Ex. 22 at 1598 ("Please advise . . . as to the relationship of these entities to AAF McQuay and the basis for seeking coverage under those policies. Please include any documentation related to any purchases, mergers or name changes and dates of such.").) Continental requested information again in April 2014. (*Id.* at 83 & Ex. 22 at 1606 ("We are wrapping up our policy search related to this notice. Would you please advise [sic] the relationships between AAF McQuay, Snyder General, American Air Filter, Perfex and any other entity AAF McQuay is claiming coverage under.").) Daikin Applied provided information on its corporate structure, information that Continental maintains was inaccurate. (*Id.* at 83.) Daikin Applied provided additional information in May 2014. (Hofer Decl. II ¶ 7, Ex. 6 ("Markos Dep.") at 83-84.) Continental and Daikin Applied continued to communicate regularly until July 2014, at which time Continental informed Daikin Applied that it was completing its policy search and would continue to investigate based on the information provided. (Daikin Applied 30(b)(6) Dep. at 76 & Ex. 22 at 1632.) As part of its investigation, Continental's claims handlers searched for potential policies, investigated Daikin Applied's corporate history, reviewed corporate filings with various secretaries of state, looked at the relevant complaints, and reviewed the relevant product lines involved in each suit. (Markos Dep. at 99-100; Hofer Decl. II ¶ 8, Ex 7 ("Hahn Dep.") at 98-100.)

Meanwhile, during the time period after the initial tender in September 2013 and while Continental was investigating coverage, Daikin Applied continued to be named in new asbestos suits for which the company defended itself ("Additional Asbestos Suits"). (Daikin Applied 30(b)(6) Dep. at 92-93, 99-100.)

In July 2015, Continental completed its investigation and acknowledged a duty to defend, subject to a reservation of rights, under three of the Policies issued to McQuay-Perfex. (Daikin Applied 30(b)(6) Dep. at 100 & Ex. 27.) On August 4, 2015, Daikin Applied tendered the Additional Asbestos Suits to Continental without providing the relevant complaints. (*Id.*, Ex. 29.) Daikin Applied provided Continental updated lists with additional suits through February 9, 2016.

In total, Daikin Applied sought over $1.7 million in defense fees from Continental, including defense costs incurred before the Asbestos Suits were tendered to Continental. (Daikin Applied 30(b)(6) Dep. at 111, 115.) Continental has since reimbursed Daikin Applied for defense costs incurred from September 2013 to January 2016 for the original twenty-three Asbestos Suits, plus the costs of defense for Additional Asbestos Suits incurred after their dates of tender. However, Continental disclaimed coverage for defense costs incurred prior to tender. The parties sought to resolve their disagreement as to the disputed pre-tender costs. Daikin Applied has since withdrawn its claim for costs incurred prior to September 2013; however, it continues to claim that it is owed $314,649.48 for pre-tender defense costs for the Additional Asbestos Suits.

## IV.    **This Action**

In its First Amended Complaint (Doc. No. 42), Continental asserts counts for breach of contract (Count One) and declaratory judgment (Count Two).  In Count One, Continental alleges that Daikin Applied breached the terms of the Policies by failing to immediately forward to Continental every demand, notice, summons or other process received by Daikin Applied, and that this breach relieves Continental of any obligation with respect to pre-tender defense and indemnity costs.  In Count Two, Continental seeks several declarations, including declarations that any duty to defend Continental has with respect to underlying Asbestos Suits filed against Daikin Applied is limited to suits in which Daikin Applied is sued as successor to McQuay-Perfex, and that Daikin Applied cannot claim coverage for its own liabilities or for the liabilities of other companies whose liability it assumed after Continental's last policy expired in 1982.  Conversely, in Count Two of its Counterclaim, Daikin Applied seeks a declaration that Continental is obligated to defend Daikin Applied in all Asbestos Suits tendered by Daikin Applied. (Doc. No. 54 ("Second Am. Ans. and Countercl.") ¶ 78.)  Daikin Applied also counterclaims for breach of contract, alleging that Continental has breached the Policies by failing to provide a defense within a reasonable amount of time after the initial tender of the Asbestos Suits.  (*Id*. ¶¶ 63-70.)

Both parties move for summary judgment on their competing declarations regarding the duty to defend.  In addition, Continental moves for partial summary judgment declaring that it has no obligation to pay pre-tender costs and dismissing Daikin Applied's counterclaim for breach of contract.

# DISCUSSION

## I.    Legal Standard

Summary judgment is appropriate if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party. *Weitz Co., LLC v. Lloyd's of London*, 574 F.3d 885, 892 (8th Cir. 2009). However, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## II.    Motions Regarding Continental's Duty to Defend

Both parties seek summary judgment on Continental's claim for declaratory judgment regarding Continental's duty to defend. Under Minnesota law, a duty to defend

an insured is broader than a duty to indemnify. *See Gruetzmacher v. Acuity*, 393 F. Supp. 2d 860, 864-65 (D. Minn. 2005). The Policies at issue impose upon Continental "a duty to defend any suit against *the insured* seeking damages on account of such bodily injury or property damage." (Donahue Decl. ¶ 8, Ex. 1 at 8.1 (emphasis added).)

The Court must first determine who is an insured under the Policies. *See, e.g.*, *Land O'Lakes, Inc. v. Emp'rs Mut. Liab. Ins. Co. of Wisc.*, Civ. No. 09-0693, 2010 WL 5095658, at *4 (D. Minn. Nov. 24, 2010). In doing so, the Court "must consider not only the language of the named-insured provision, but also what a reasonable person would have understood that language to mean in light of the surrounding factual context." *Id.*

The parties dispute who is an "insured." Daikin Applied submits that it is the insured under the Continental Policies and that it is a party to the Asbestos Suits in its name or under a prior name. Specifically, Daikin Applied asserts that Continental must defend it in any Asbestos Suit that names McQuay, Inc., McQuay-Perfex, Inc., McQuay International, SnyderGeneral Corp., AAF-McQuay, Inc., or Daikin Applied. (*See* Second Am. Answer ¶ 22 (alleging that these entities comprise the "insured" under the Policies as different names for the same entity through name changes, corporate mergers or assumed names).) Continental, on the other hand, argues that the Policies cover only one predecessor of Daikin Applied—McQuay-Perfex. In addition, Continental underscores that during the policy periods of 1967 to 1982, Continental's insured (McQuay-Perfex) was not affiliated in any way with Singer, SnyderGeneral Corporation, American Filter, or potential other defendants ARCO Comfort Products Co., Halstead & Mitchell, Barry Blower, or Jenn Fan (or their respective predecessors).

11

Continental relies heavily on the *Land O'Lakes, Inc.* case. In that case, Land O'Lakes purchased Midland Cooperatives in 1982 and became responsible for Midland's liabilities. *Id.* at *1. Midland operated an oil refinery in Oklahoma from the 1940s to the 1970s, years before it merged with Land O'Lakes. *Id.* The EPA determined that the site of the refinery was contaminated as a result of Midland's operation and sought cleanup costs from Land O'Lakes. *Id.* Land O'Lakes sought insurance coverage from Travelers Indemnity Company for environmental contamination claims under policies issued to Midland, as well as under historical policies issued to Land O'Lakes before Land O'Lakes purchased Midland and "while *Land O'Lakes* had nothing to do with the refinery." *Id.* "Specifically, Travelers provided coverage to Land O'Lakes under various comprehensive general liability [] policies from 1964 through 1981—the years preceding Land O'Lakes' acquisition of Midland." *Id.*

The court in *Land O' Lakes* explained the importance of identifying the named-insured:

> The identity of the insured party as set forth in the named-insured provision is an essential element of any insurance policy. Before a court can discern the extent of the coverage provided by a policy, it must examine *all* of the terms of the policy, including not only the affirmative grants of coverage, but also the provisions that identify who is insured and for what period of time.

*Id.* at *4 (emphasis in original). The Court also explained the basic understanding that when a policy identified a named insurer, like "Acme, Inc.", the parties generally intend that to mean:

> "Acme, Inc. as it exists during the term of this policy,"—not "Acme, Inc. as it may exist any time in the distant future. And if "Acme, Inc." does

> nothing during the policy term that results in liability, then the insurer will not be liable under the policy, even if some *other* company—a company that is *not* insured under the policy—commits wrongful acts during the existence of the policy.

*Id.* (emphasis in original). Using this reasoning, the court held that Travelers was not obligated to defend or indemnify against claims arising from activities of Midland, an entity with no relationship to Land O'Lakes at the time the policies were in effect and that was acquired by Land O'Lakes years later. *Id.* *7. The court in *Land O' Lakes* explained its reasoning in terms of an insurer's ability to assess the risks of insuring an entity:

> Travelers could not possibly have intended, nor reasonably have been understood, to have insured not only these three other companies as they existed in 1964, but also any and all other companies that one of these three companies might acquire years after the policy expired. . . . The contrary rule would not only make it impossible for an insurer to assess the risks that it is insuring (and to price its policy accordingly), but would also allow insureds to unilaterally impose liabilities on insurers and thereby create a significant moral-hazard problem.

*Id.* at *5.

The reasoning in *Land O' Lakes* is compelling and applies to the facts of this case. Here, Continental agreed to insure the risks associated with the insured entity— McQuay-Perfex—during the policy period covering 1967-1982. Daikin Applied succeeded to McQuay-Perfex's rights under the Policies and is therefore entitled to receive a defense from Continental to the extent that McQuay-Perfex would be entitled to receive such a defense. Accordingly, Daikin Applied would be entitled to a defense for liability arising from McQuay-Perfex's activities during the policy period, such as a

claim for bodily injury during the policy period due to asbestos exposure caused by products made by McQuay-Perfex.

However, Daikin Applied argues that Continental must defend Daikin Applied if "any part of an Asbestos Suit alleges or arguably alleges that bodily injury occurred during any of the Continental Policy periods due to the use of or exposure to asbestos-containing products manufactured by Daikin Applied, in either its current name or a prior name." (Doc. No. 196 at 6.) To allow such broad coverage under this circumstance would deny Continental of its ability to access the risk of insuring McQuay-Perfex. Continental could not have anticipated, or knowingly accepted, the risk of providing coverage to entities whose liabilities were acquired after the Policies' expiration. Again, Daikin Applied is entitled to defense coverage under McQuay-Perfex's Policies, but only to the extent that McQuay-Perfex would have been entitled to such coverage. *See, e.g.*, *Total Waste Mgmt. Corp. v. Commercial Union Ins. Co.*, 857 F. Supp. 140, 150, 153 (D.N.H. 1994) (holding that a successor corporation could seek insurance coverage under policies issued to the acquired company, but only to the extent that the acquired company would be entitled to coverage; explaining that there is no coverage for an entity which was acquired by the named insured after the expiration of the policy).

Daikin Applied attempts to sidestep the above authority and submits that if any part of an Asbestos Suit alleges or arguably alleges that bodily injury occurred during any of the Continental Policy periods due to the use of or exposure to asbestos-containing products manufactured by Daikin Applied, under either its current name or a prior name,

14

Continental must defend.  (Doc. No. 196 at 6.)  In support, Daikin Applied points to

Minnesota law that a duty to defend an insured arises when any part of a claim against

the insured is arguably within the scope's policy.  *See, e.g.*, *Gruetzmacher*, 393 F. Supp.

2d at 864-65.  Daikin Applied further submits that Continental cannot, by its own

admission, establish that any of the Asbestos Suits clearly fall outside the coverage.

Daikin Applied maintains that, unless and until Continental can clearly establish there is

no potential for a covered claim, it must defend.

While Daikin Applied's recitation of the general law on a duty to defend may be

accurate, that duty does not apply if Daikin Applied is not an "insured" under the

Policies.  Daikin Applied must first establish that it is an "insured" under the Policies

before the "potential for coverage" standard applies.  *See, e.g., Eng'g & Const.*

*Innovations, Inc. v. L.H. Bolduc Co., Inc.*, 825 N.W.2d 695, 705 (Minn. 2013) ("In order

to recover from Travelers, ECI must show that it is an insured under the policy.").  In the

same vein, Continental cannot be required to defend Daikin Applied for after-acquired

liability because it is not the liability of the *insured*.  *See York Int'l Corp. v. Liberty*

*Mutual Ins. Co.*, Civ. No. 10-692, 2011 WL 2111989, at *5 (M.D. Pa. May 26, 2011)

(explaining that a company seeking defense from an insurance company as a successor-

in-interest to the insured may only seek defense for complaints that name the insured

company or the plaintiff as a successor-in-interest to the insured; the plaintiff corporation

"will not be permitted to 'piggy back' additional claims that occurred outside the policy

periods and/or do not name" the insured company or the plaintiff as a successor-in-

interest).

The record establishes that Daikin Applied has assumed the liabilities of numerous entities over several years, many of which were not related to McQuay-Perfex during the years that the Policies were in effect. To allow these corporate transactions that occurred after the expiration of the Policies to create new insureds would fundamentally alter the agreed upon coverage. Indeed, Continental did not agree to defend McQuay-Perfex with respect to all liabilities assumed by a successor after the Policies expired. Daikin Applied also suggests that because the allegations in the relevant complaints are unclear, there is enough to require a duty to defend. The Court is not persuaded. If a complaint does not specify an insured as the responsible party, there is no duty to defend. *See, e.g.*, *Henkel Corp. v. Hartford Accident & Indem. Co.*, 271 F. App'x 161, 164 (3d Cir. 2008) ("Hartford has no duty to defend because an insured entity has not been named as a defendant in any of the Underlying suits."); *Alea London Ltd. v. Bickford*, 627 F. Supp. 2d 763, 770 (S.D. Tex. 2009) (explaining that because the named defendants in the underlying lawsuits are not named insureds, there is no duty to defend); *Burns v. Scottsdale Ins. Co.*, Civ. No. 08-1136, 2010 WL 2947345, at *4 (W.D. Wash. July 23, 2010) (explaining that there is no duty to defend a party who is not an "insured"), *aff'd*, 434 F. App'x 675 (9th Cir. 2011).

For the reasons stated above, the Court concludes that Continental assumed a duty to defend suits brought against its insured—McQuay-Perfex. Continental is not obligated to defend Daikin Applied with respect to entities or liabilities acquired by McQuay-Perfex's successor after the expiration of the final Policy. Therefore, Continental's duty to defend arises only where an Asbestos Suit alleges liability arising out of McQuay-

16

Perfex or where Daikin Applied has been sued as a successor to McQuay-Perfex. The duty does not extend to suits where Daikin Applied is named individually or as a successor to entities other than McQuay-Perfex.

Based on the above, the Court grants Continental's motion and denies Daikin Applied's motion with respect to the competing declarations on the duty to defend.

### III.    Continental's Motion for Partial Summary Judgment

Continental also moves for partial summary judgment declaring that it has no obligation to pay pre-tender costs for certain defense costs incurred by Daikin Applied between September 2013 and January 2016. In addition, Continental seeks dismissal of Daikin Applied's counterclaim for breach of contract. The Court considers both below.

#### A.    Pre-Tender Defense Costs

The issue before the Court is whether Daikin Applied is entitled to pre-tender defense costs for the Additional Asbestos Suits. Under Minnesota law, the "formal tender of a defense request is a condition precedent to the recovery of attorney fees that a party incurs defending claims that a third party is contractually obligated to pay." *SCSC Corp. v. Allied Mut. Ins. Co.*, 536 N.W.2d 305, 316 (Minn. 1995) (citing *Hill v. Okay Constr. Co., Inc.*, 252 N.W.2d 107, 121 (Minn. 1977)), *overruled on other grounds in Bahr v. Boise Cascade Corp.*, 766 N.W.2d 910, 919 (Minn. 2009). The general rule, as articulated in *Domtar, Inc. v. Niagara Fire Ins. Co.*, 563 N.W.2d 724, 739 (Minn. 1997), provides that "an insurer cannot be held responsible for defense costs incurred prior to the tender of the defense request giving rise to the insurer's duty to defend."

17

Daikin Applied does not dispute that this general rule, if applicable, would preclude recovery for pre-tender costs. Nor does Daikin Applied dispute the underlying fact that Continental has paid covered post-tender costs in the Additional Asbestos Suits. Instead, Daikin Applied argues that the *Domtar* rule does not apply at all because Continental breached its duty to defend the original twenty-three Asbestos Suits tendered in September 2013 and, therefore, Continental lost the benefit of the policy's notice requirement. In making this argument, Daikin Applied points to the facts supporting its counterclaim for breach of contract, namely that Continental's inaction and delay constitute a breach of its duty to defend and, thus, relieve Daikin Applied of its obligation to give notice of additional Asbestos Suits brought against Daikin Applied. Daikin Applied submits that in order to determine the issue of pre-tender costs, the Court must also consider the merits of Daikin Applied's breach-of-contract counterclaim.

Daikin Applied argues that Continental failed to timely defend Daikin Applied, citing authority that the contractual duty to defend includes the implied obligation to act promptly in a reasonable "good faith" manner. Daikin Applied argues that Continental took nearly two years to decide as to its duty to defend, and only then belatedly agreed to reimburse "post-tender" costs despite a broader obligation to provide a defense. Daikin further argues that the delay in determining coverage was not reasonable. Daikin Applied submits that the determination of whether Continental acted reasonably in determining its contractual obligation in a timely manner is not well-suited for summary judgment because issues of fact remain. In addition, Daikin Applied argues that any breach on the part of Continental relieved Daikin Applied of its obligation to notify Continental of the

Additional Asbestos Suits in order to recover defense costs.  Finally, Daikin Applied argues that waiver, estoppel, and the implied covenant all preclude Continental from relying on equitable rules.

The Court has considered the parties arguments and reviewed the relevant portions of the record.  The Court concludes that the general rule that an insurer cannot be held responsible for defense costs incurred prior to tender applies in this case.  *See Domtar, Inc.*,  563 N.W.2d at 739.  The Court is not persuaded by Daikin Applied's arguments to the contrary.  First, Daikin Applied has not demonstrated that any exception to the rule is applicable.  Indeed, evidence in the record suggests that Daikin Applied itself was not diligent in seeking coverage and has not offered a reason for its failure to tender the Additional Asbestos Suits.  Second, even if Continental's alleged delay in acknowledging coverage constitutes a breach of the duty to defend, that breach alone would not make Continental liable for pre-tender costs.  The Court in *Domtar* rejected such an argument.  *See id.* (explaining that the remedy for a breach of duty to defend is the benefit of the bargain; noting that allowing pre-tender costs would go beyond that).  At least one case has found that a bad faith denial of coverage could render an insurer liable for pre-tender costs.  *See Gopher Oil Co. v. Am. Hardware Mutual Ins. Co.*, 588 N.W.2d 756, 771 (Minn. App. 1999).  But Daikin Applied has not pointed to evidence that would suggest that Continental engaged in a bad faith denial of coverage.  In fact, Continental did not deny coverage.  Further, the Court rejects Daikin Applied's arguments regarding waiver, estoppel and implied covenant.  The pre-tender rule is contractual in nature and equitable principles do not apply.  *See SCSC*, 536 N.W.2d at 316 ("Generally, [] the formal tender

19

of a defense request is a condition precedent to the recovery of attorney fees that a party incurs defending claims that a third party is contractually obligated to pay.").  Moreover, Daikin Applied has not pointed to evidence that would suggest that Continental's conduct constitutes waiver or estoppel.  Again, the alleged delay in acknowledging coverage is not a denial of coverage, and any such delay would not affect Daikin Applied's obligation to tender the Additional Asbestos Suits.

Finally, Daikin Applied's argument that the pre-tender rule in this case works an unreasonable forfeiture is without merit.  Daikin Applied argues that being required to pay for defense costs because of its non-compliance with the pre-tender rule constitutes a forfeiture.  *See, e.g.*, *Capistrant v. Lifetouch Nat'l Sch. Studios, Inc.*, 916 N.W.2d 23, 29 (Minn. 2018) (providing that equity may bar forfeiture where a breach is not material and the forfeiture would be disproportionate).  However, the Supreme Court of Minnesota has also explained that tender is a material condition precedent.  *Domtar*, 563 N.W.2d at 739; *SCSC*, 536 N.W.2d at 316.  The Court does not reach proportionality where a material condition is not met.  Therefore, the pre-tender rule does not affect a forfeiture.

For all the above reasons, the Court concludes and declares that Continental has no obligation to pay pre-tender costs for the Additional Asbestos Suits.

### B.    Breach of Contract Counterclaim

The Court also concludes that Daikin Applied's breach of contract counterclaim is properly dismissed.  In light of the above determination with respect to pre-tender costs, the counterclaim cannot survive insofar as it is based on the recovery of such costs. Daikin Applied argues that its counterclaim covers damages that go beyond defense

costs, such as consequential damages including but not limited to attorney fees and expenses in seeking relief for breach of contract. (Doc. No. 259 at 20.) These costs, however, are derivative of the failure to pay pre-tender costs. Because that portion of Daikin Applied's claim is not viable, Daikin Applied's related request for fees and costs also fail. *See In re Silicone Breast Implant Ins. Coverage Lit.*, 652 N.W.2d 46, 73 (Minn. App. 2002) (declining to award attorney fees absent a breach of the duty to defend), *aff'd in part, rev'd in part*, 667 N.W.2d 405 (Minn. 2003).

## ORDER

Based on the files, record, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.     Continental's Motion for Partial Summary Judgment Declaring that Its Duty to Defend is Limited to Suits Against McQuay-Perfex, Inc. (Doc. No. [148]) is **GRANTED**;

2.     Daikin Applied's Motion for Partial Summary Judgment on the Duty to Defend (Doc. No. [175]) is **DENIED**;

3.     Continental's Motion for Partial Summary Judgment Declaring that It Has No Obligation to Pay Pre-Tender Defense Costs, and Dismissing Daikin Applied's Breach of Contract Claim (Doc. No. [225]) is **GRANTED**; and

4.     Daikin Applied's Breach of Contract Counterclaim is **DISMISSED**.


Dated:  August 14, 2019                    s/Donovan W. Frank
                                           DONOVAN W. FRANK
                                           United States District Judge