# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| The Continental Insurance Company,<br><br>Plaintiff,<br><br>v.<br><br>Daikin Applied Americas, Inc.,<br><br>Defendant. | Case No. 17-cv-552 (DWF/HB)<br><br><br>**O R D E R** |

HILDY BOWBEER, United States Magistrate Judge

This matter is before the Court on The Continental Insurance Company's Motion

for Leave to Supplement and Amend Complaint [Doc. No. 299].  Plaintiff moves to

amend its complaint to delete certain claims and to supplement its complaint with a new

claim for breach of an implied contract.  Defendant does not challenge the motion insofar

as it seeks to strike certain claims, but it opposes the addition of the new claim, arguing

that it is untimely and that Plaintiff has failed to show good cause for the modification.

For the reasons set forth below, the Court grants the motion as to the deletion of certain

claims and denies the motion as to the addition of the new claim for breach of contract.

## I.     BACKGROUND

### A.     Procedural History

Plaintiff sold general liability insurance policies to McQuay-Perfex, Inc, a

Minnesota corporation.  (Am. Compl. ¶¶ 8–9 [Doc. No. 42].)  Over the course of its

history, McQuay-Perfex merged with other entities and changed its name several times, including, mostly recently, to Daikin Applied Americas, Inc., the named Defendant in this case. (*Id.* ¶¶ 9–14.) As the successor-by-merger to McQuay-Perfex and its other iterations, Defendant has been named in several suits arising out of the manufacturing and sale of products containing asbestos. (*Id.* ¶¶ 7, 14.) Defendant tendered the defense of those suits to Plaintiff on the ground that the liability insurance policies issued by Plaintiff covered those claims. Plaintiff undertook to defend Defendant in those cases, but it expressly reserved the right to disclaim coverage, including the duty to defend, on the ground that the claims were not covered by Plaintiff's policies. (*Id.* ¶ 27.) It filed the instant action in part to determine the rights of the parties with respect to the liability insurance policies. (*Id.* ¶¶38–40.)

On August 14, 2019, the Honorable Donovan W. Frank, United States District Judge, ruled on the parties' Motions for Partial Summary Judgment and issued a Declaratory Judgment Order that Plaintiff did not owe Defendant a duty to defend against any asbestos-related suits except those specifically alleging the liability of McQuay-Perfex. [Doc. No. 290 at 16.] He ruled that Plaintiff is not obligated to defend Defendant "with respect to entities or liabilities acquired by McQuay-Perfex's successor after the expiration of the final Policy." (*Id.*) "Therefore, Continental's duty to defend arises only where an Asbestos Suit alleges liability arising out of McQuay-Perfex or where Daikin Applied has been sued as a successor to McQuay-Perfex," but not to suits "where Daikin Applied is named individually or as a successor to entities other than McQuay-Perfex.

(*Id.* at 16–17.)

## B. Allegations in the Proposed Amended Complaint

A month after Judge Frank's decision, Plaintiff notified Defendant that it was

withdrawing from its defense in all of the asbestos suits that did not name McQuay-

Perfex. (Stroup Letter [Doc. No. 301-3].) Plaintiff also demanded reimbursement of the

costs it incurred while representing Defendant in the non-covered suits. The insurance

contract between Plaintiff and Defendant did not specifically require such

reimbursement, but Plaintiff argues the parties had an implied contract to that effect

based on Plaintiff's July 8, 2015, reservation of rights letter, in which Plaintiff, *inter alia,*

reserved "the right to recover any defense costs or indemnity payments should it be

determined that [Plaintiff] had no duty to incur such costs of [sic] payments." (*Id.* [Doc.

No. 301-3 at 13].)

Defendant refused to reimburse Plaintiff, so Plaintiff seeks to amend its Amended

Complaint to add a new claim for breach of the implied contract and a "holding that

[Plaintiff] is entitled to reimbursement of the defense costs it paid in defense of the non-

covered Asbestos Suits." (Proposed Am. Compl. (Redline version) ¶¶ 58, 62 [Doc.

No. 301-2].)

## II. DISCUSSION

### A. Amendment of Pleadings

A court should freely grant leave to amend[1] a pleading "when justice so requires."

---

[1] Plaintiff's motion is styled as both a Motion to Amend and a Motion to Supplement. The distinction is largely semantic since courts generally apply the same

Fed. R. Civ. P. 15(a)(2).  But even under this liberal standard, parties do not have an

absolute right to amend their pleadings.  *Sherman v. Winco Fireworks, Inc.*, 532 F.3d

709, 715 (8th Cir. 2008).  The decision whether to permit amendment falls within the

sound discretion of the district court.  *Bell v. Allstate Life Ins. Co.*, 160 F.3d 452, 454 (8th

Cir. 1998).  A court may deny leave to amend "based upon a finding of undue delay, bad

faith, dilatory motive, repeated failure to cure deficiencies in previous amendments,

undue prejudice to the non-moving party, or futility."  *Baptist Health v. Smith*, 477 F.3d

540, 544 (8th Cir. 2007) (citation omitted).  Particularly, "when a motion to amend is

filed after the expiration of the applicable deadline in the Court's Scheduling Order, Rule

15(a)'s permissive test no longer applies, and instead the tougher "good cause" standard

applies under Rule 16(b)(4)."  *Target Corp. v. LCH Pavement Consultants, LLC*, 960 F.

Supp. 2d 999, 1004 (D. Minn. 2013).  "The good cause standard is an exacting one, and

requires a demonstration that the Scheduling Order cannot reasonably be met despite the

diligence of the party seeking the extension."  *E.E.O.C. v. Hibbing Taconite Co.*,

266 F.R.D. 260, 265 (D. Minn.  2009) (internal quotations omitted).  "Allowing a party to

bring a motion to amend outside the applicable scheduling order's deadline without

---

standard in deciding whether to grant leave to supplement as is used to determine whether
to grant leave to amend.  *E.g. Riggs v. City of Owensville*, No. 4:10–CV–793 CAS,
2011 WL 1576723, at *2 (E.D. Mo. April 26, 2011).  Furthermore, the purpose of a
supplemental pleading is to allege matters that occurred after the filing of the original
pleading but that relate to matters originally pleaded, whereas the purpose of an amended
pleading is to allege matters that occurred before the filing of the original pleading but
were unknown at that time.  *United States v. Vorachek*, 563 F.2d 884, 886 (8th Cir. 1977)
(quotation omitted).  As described in more detail below, the Court is skeptical that the
motion brings forward "new" matters.

showing that the party diligently tried but was unable to comply with that deadline would

potentially undermine these fundamental principles of our civil justice system." *Target*

*Corp.*, 960 F. Supp. 2d at 1006–07.

### B. Contingency and Ripeness

Plaintiff seeks to amend its complaint with a new claim for breach of implied

contract, based on Defendant's refusal to reimburse Plaintiff for the costs it incurred

representing Defendant in the non-covered suits.  Plaintiff argues that the claim is new

because it is "based on recent events."  (Pl.'s Mem. at 1 [Doc. No. 300].)  The recent

events Plaintiff references are (1) Judge Frank's ruling on August 14, 2019 and (2)

Defendant's subsequent refusal to reimburse Plaintiff.  Plaintiff argues that *but for* these

events it would not have a claim for breach of contract.  (Pl.'s Reply at 4 [Doc. No. 308].)

Plaintiff is correct that its present claim was contingent on the resolution of the

declaratory judgment in its favor: if the Court had ruled the other way on that matter

Plaintiff would have no breach of contract claim to raise.  But a *contingent* claim is not a

*new* claim.  The Federal Rules of Civil Procedure are clear on that point: "A party may

join two claims even though one of them is contingent on the disposition of the other."

Fed. R. Civ. P. 18(b).  *See Stanfield v. Swenson*, 381 F.2d 755, 756 (8th Cir. 1967)

(joining a petition for a writ of habeas corpus and a claim for damages in one case even

though "obviously the second cause of action was entirely dependent upon appellant's

success in the first cause of action"); *Price v. Elder*, No. 1:15-CV-36-SA-DAS, 2016 WL

3449909, at *2 (N.D. Miss. June 20, 2016) (finding that Rule 18(b) permitted Plaintiff to

join a contingent indemnity claim even though Plaintiff "[did] not *yet* possess the injury necessary to pursue an indemnity claim, as there has been no judgment or settlement against [Defendant]") (emphasis in original).

Plaintiff mistakes a contingent claim for a claim that is not yet ripe. Ripeness is a question of timing (*Thomas v. Union Carbid Agr. Prod. Co.*, 473 U.S. 568, 580 (1985)), since a claim brought too early risks that a court would issue an opinion that is merely advisory. "[I]ts basic rationale is to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148 (1967). Contingent claims do not present the same risk of abstraction. Just because Claim 2 is dependent on the outcome of Claim 1 does not mean that hearing the two claims together would render the Court's opinion premature or advisory. It merely means that the factual record needs to be further developed before Claim 2 can be adjudicated. This is particularly true in the insurance context, which the Second Circuit Court of Appeals has described as "the paradigm for asserting jurisdiction despite future contingencies that will determine whether a controversy ever actually becomes real." *E.R. Squibb & Sons, Inc. v. Lloyd's & Co.*, 241 F.3d 154, 177 (2d Cir. 2001) (internal quotations omitted).

In *Progressive Preferred Ins. Co. v. Reagor*, an insurance company sought a declaration of its liabilities after a woman sought damages from its insured, Reagor, for an injury resulting from an accident involving a mechanical log-splitter. 189 F. Supp. 3d 850, 852 (D. Minn. 2016). Reagor and the injured woman argued that the court should

dismiss the declaratory suit as unripe, since it was contingent on the outcome of another case which would determine each party's liabilities. *Id.* at 856. The court disagreed, finding that the parties were confusing a "disagreement about what the past facts are" (i.e., who was responsible for the accident) with a "need that further happenings take place." *Id.* The case was ripe because no "further happenings" were required—only fact-finding. *Id*. "The Court acknowledges that if the facts are found one way or another, some of the parties' claims may be resolved or precluded, but that is not a ripeness problem; it is simply the nature of litigation." *Id.*

Plaintiff supports its position with the following line from *Texas v. United States*: "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." 523 U.S. 296, 300 (1998). At first blush, this line does seem to merge the concepts of ripeness and contingency. But a closer read of the facts reveals that in *Texas* the contingency problem was greater than just an under-developed factual record; rather, no court could issue an opinion on the matter without some 'further happenings.' In *Texas,* the state legislature enacted a law to hold local school boards more accountable for student achievement. *Id*. at 297–98. If a district fell short of certain goals, the law permitted the Texas Commissioner of Education to impose a range of sanctions, including appointment of a master to oversee the district's operations or a management team to direct operations. *Id.* at 298. Pursuant to § 5 of the Voting Rights Act, Texas submitted the new law to the U.S. Attorney General, who concluded that the portions relating to appointment of a master or

management team could, under certain conditions, violate the Voting Rights Act. *Id.* at

299. Texas challenged the decision in federal court. *Id.* The Supreme Court found that

the matter was not ripe for adjudication because a number of key events had not yet

occurred: no school district had fallen below the state standards (or was even likely to),

and even if one did, the Commissioner would still be obligated to impose a number of

other, lesser sanctions before appointing a master or management team. *Id.* at 300.

The Supreme Court dismissed the case on ripeness grounds, holding that it was "too

speculative whether the problem Texas present[ed would] ever need solving." *Id.* at 302.

The same is not the case here. In *Texas* a complex series of events had to occur

before there was even a possibility that the Voting Rights Act would be implicated.

By contrast, Plaintiff's claim to reimbursement is based on facts that are already in the

record—namely, the content of the policies themselves (which laid the groundwork for

whether the suits were covered) and the 2015 reservation of rights letter (which is alleged

to lay the groundwork for the right to reimbursement).

Plaintiff argues that there was one "further happening" that had to take place

before it could assert its breach of contract claim: Defendant needed to refuse to

reimburse Plaintiff. "[I]f Daikin Applied had agreed to reimburse Continental following

Continental's demand, Continental would have no claim for breach of the reimbursement

obligation." (Pl.'s Supp. Briefing Letter [Doc. No. 311 at 1–2].) It is true that

Defendant's refusal to reimburse made the claim even more ready for judicial

adjudication—but it was not required for it. Ripeness is not a black-or-white assessment,

but rather a "matter[] of degree." *UnitedHealth Group*, 2006 WL 695523, at *3. In

assessing a contingent claim, "courts should focus on the practical likelihood that the

contingencies will occur." *E.R. Squibb & Sons*, 241 F.3d at 177. Here, although it was

not certain that Daikin would refuse to reimburse Continental, that outcome seems

practically likely to occur—or at least foreseeable. It is hardly comparable to the series

of "future events" that would need to come to pass to confer jurisdiction to the Supreme

Court in *Texas*. 523 U.S. at 300.

Moreover, Plaintiff points to no precedent in this Circuit or any other suggesting

that the courts are unwilling to allow the contingent claim to be pleaded simultaneously

with its predicate. Indeed, the precedent in this Circuit is to the contrary. *See, e.g.,*

*Westchester Fire Ins. Co. v. Wallerich*, 563 F.3d 707 (8th Cir. 2009) (considering an

action for declaratory relief and a contingent action for reimbursement of defense costs at

same time); *Reagor*, 189 F. Supp. 3d at 856; *Am. Ins. Co. v. St. Jude Med., Inc.*, 597 F.

Supp. 2d 973, 979 (D. Minn. 2009) (permitting joinder of insurance broker even though it

had not yet been determined whether the insurance policy covered the matter);

*UnitedHealth Grp., Inc. v. Lexington Ins. Co.*, No. Civ. 05-1289 (DSD/SRN), 2006 WL

695523, at *2–5 (D. Minn. Mar. 17, 2006) (determining that an action that raised both a

claim for declaratory judgment and a claim for breach of contract was ripe).

Importantly, the issue involved here has already been considered by a court in this

District. In *UnitedHealth Group* a district judge rejected a magistrate judge's

recommendation to dismiss as unripe a contingent claim. 2006 WL 695523, at *2–5.

The magistrate judge found that the one of the claims would not be ripe until (1) the court made a determination on what the insurance policies covered and (2) the defendant subsequently disputed that coverage. *Id.* at \*2. The district court disagreed, finding that no further factual development was necessary since there was a high enough probability of injury. *Id.* at \*3 ("The court finds that UnitedHealth Group has proffered sufficient evidence to indicate that there is a practical likelihood that Columbia's policy has been, or will soon be, penetrated. Accordingly, further factual development is not necessary."); *see also Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 681 (7th Cir. 1992).

The Court therefore concludes that Plaintiff could have pleaded its contingent right to reimbursement of defense costs in its Amended Complaint alongside its claim for declaratory relief. To be clear, the Court does not conclude that Plaintiff was *required* to raise the claim simultaneously—only that it would have been allowed to do so. But because it did not do so, Plaintiff's desire to amend its complaint to add the claim now is permissible only to the extent permitted by Rules 15 and 16, and case precedent.

The deadline for motions to supplement or amend pleadings was January 16, 2018. (Scheduling Order at 2 [Doc. No. 36].) Since Plaintiff could have raised this claim initially (or any time before January 16, 2018), the Court does not find that Plaintiff acted "diligently . . . to comply with that deadline." *Target Corp.*, 960 F. Supp. 2d at 1006–07. In addition, the Court finds that Defendant would be prejudiced by allowing the claim to be added at this time, because it would require additional discovery and most likely lead to additional motion practice, all of which could more efficiently have been incorporated

into the prior stages of this litigation, and all of which, at this stage, would further delay final judgment in the instant case. That, in turn, would delay Defendant's ability to appeal that judgment and obtain review of the Court's coverage decision. The Court therefore concludes that Plaintiff has not met its burden of showing good cause to modify the Scheduling Order. Fed. R. Civ. P. 16(b)(4).

## III. Conclusion

Accordingly, **IT IS HEREBY ORDERED** that The Continental Insurance Company's Motion for Leave to Amend Complaint [Doc. No. 299] is **GRANTED** as to the claims it seeks to delete and **DENIED** as to Plaintiff's new claim for breach of contract.

Dated: December 17, 2019

    s/ *Hildy Bowbeer*
HILDY BOWBEER
United States Magistrate Judge